UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BED BATH & BEYOND INC., | Civil Action No. 08-cv-5839 (SDW) (MCA) |
| Plaintiff, | |
| v. | |
| SEARS BRANDS, LLC, | OPINION |
| Defendant. | October 22, 2010 |

**WIGENTON, District Judge**

This matter comes before the Court on the submissions by Plaintiff, Bed Bath and Beyond Inc. ("BBB"), and Defendant, Sears Brands, LLC ("Sears"), for claim construction to resolve disputes over the construction of claim terms in U.S. Patent No. 5,970,474 (the "'474 patent"). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338. Venue is proper in accordance with 28 U.S.C. §§ 1391(b) and 1400. On August 20, 2010, the Court conducted a claim construction hearing, during which it heard arguments in support of the parties' proffered claim constructions. For the reasons stated below, the Court construes the disputed claim terms as follows.

## BACKGROUND

The '474 patent is entitled as "Registry Information System for Shoppers" and was issued on October 19, 1999 to LeRoy *et al*. In general terms, the patent describes a system that provides solutions to problems commonly faced by retail store gift registry systems, such as: (1) duplicate gift purchases by customers due to delayed updates to gift registry records; and (2)

difficulties retrieving gift registry records where the registrant and the purchaser are not in proximity to the same store. ('474 patent col. 1:21-28.) The inventors of the '474 patent attempted to circumvent these problems by devising a system that provides "real-time" updated purchase information on a host database. The '474 patent consists of two independent claims, claims 1 and 17, and twenty dependent claims. (*See id*. cols. 9-12.) The two independent claims are substantially similar in all aspects except that claim 1 is directed towards implementation within "a retail establishment" (*Id*. cl. 1), whereas claim 17 is directed towards implementation of "[a]n inter-site" gift registry system. Both independent claims include product selection devices, data processors, registry retrieval devices, point-of-sale data input devices, and a host computer. (*See id*. cls. 1, 17.) All dependent claims are construed "to incorporate by reference all the limitations of the [independent] claim to which it refers." 35 U.S.C. § 112.

The parties initially briefed a set of four claim construction issues, but were then able to resolve some of the disputes. At the *Markman* hearing, the parties asked the Court to address three sets of claim terms: 1) "desired items"; 2) "data processor"; and 3) "retail establishment," "retail site," and "inter-site."

## LEGAL STANDARD

A patent infringement action requires a two-step analysis: "first, the court determines the meaning of the disputed claim terms, then the accused device is compared to the claims as construed to determine infringement." *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 804 (Fed. Cir. 2007). The first step, claim construction, is a matter of law reserved for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1995). In a claim construction analysis, the court begins with and remains focused on the analysis of the claim language itself. *Philips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir.

2005) ("a 'bedrock principle' of patent law [is] that the claims of a patent define the invention to which the patentee is entitled the right to exclude") (citations omitted). The terms within the claims are generally given their "ordinary and customary meaning" as understood by "a person of ordinary skill in the art in question at the time of the invention . . . ." *Id*. at 1313.

Courts can rely on both intrinsic and extrinsic evidence to define the scope of patent claims. *Id.* at 1317. Intrinsic evidence includes "the written description, the drawings, and the prosecution history." *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002). Within the class of intrinsic evidence, "the specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Philips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d, 1576, 1582 (Fed. Cir. 1996)). Where available, courts "should also consider the patent's prosecution history . . . ." *Philips*, 415 F.3d at 1315 (quoting *Markman*, 52 F.3d at 980); *Home Diagnostics, Inc. v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004).

Extrinsic evidence such as "inventor testimony, dictionaries, and learned treatises" can also be used. *Philips*, 415 F.3d at 1317. However, extrinsic evidence is less significant than the intrinsic record in determining the legally operative meaning of claim language. *Philips*, 415 F.3d at 1314. Moreover, where the ordinary meaning can be ascertained from the intrinsic evidence, a court does not have to evaluate extrinsic evidence. *Vitronics*, 90 F.3d at 1583.

## DISCUSSION

I. "Desired Items"

The first disputed claim construction issue concerns the meaning of "desired items." BBB contends that "desired items" is limited to "two or more items desired by a registrant." (BBB's Opening Br. 16.) BBB, on the other hand, argues that the plain grammatical meaning of

the phrase implies more than one item and that Sears' claimed system must be capable of collecting multiple desired items. (*Id*. 17-18.) Sears proposes that the term "desired items" refers to "one or more items desired by a registrant."

Here, the Court first looks to the claim language. The term "desired items" appears in independent claims 1 and 17 of the '474 patent:

> 1.  [A] data processor in communication with said local area network adapted to communicate with the product selection device via said local area network to thereby *collect the desired items selected by the registrant* and *route said desired items* to [the] registry database on [the] host computer;
>
> A point-of-sale data input device in communication with said local area network for *identifying desired items which have been purchased by a customer* for routing to [the] host computer;
>
> [the] host computer having a storage unit for maintaining the registry database and a data processor for processing selection and purchasing transactions, wherein *desired items consecutively selected by the registrant* are added to the registry database to create a registry list, and desired items purchased by the customer are associated with the registry database to *create an updated list reflecting the purchase of said desired items*.
>
> 17.  [A] a handheld product selection device directly in communication with [the] local area network via wireless communication for *identifying desired items selected by a registrant*;
>
> A product selection device data processor in communication with [the] local area network adapted to communicate with the product selection device via [the] local area network to thereby *collect the desired items selected by the registrant* and *route said desired items* to [the] registry database on [the] host computer;
>
> A point-of-sale data input device in communication with [the] local area network for *identifying desired items which have been purchased by a customer* for routing to [the] host computer;
>
> A point-of-sale data processor adapted to communicate with the point-of-sale input device to thereby *collect the desired items selected by the purchasing customer* and *route said desired items* to the host computer; and
> Said host computer having a storage unit for maintaining the registry database and a data processor for processing selection and purchasing transactions, *wherein desired items consecutively selected by the registrant* at the registry enrollment site are added to the registry database to create a registry list . . . .

4

('474 patent cls. 1, 17.) (emphasis added)

To summarize, the claim language teaches that various components of the invented gift registry system operate on the "desired items" that were either selected by the registrant or purchased by a customer. It is readily apparent from a plain reading of the claim language that the term "desired items" refers to any number of items that are purchased by a customer or selected by a registrant. Consequently, limiting "desired items" to "two or more items" would impose an artificial and non-sensical quantitative limitation on the number of items a customer may purchase from a gift registry. Thus, based on the claim language alone, it is clear that "desired items" can refer to "one or more items."

This Court next examines the specification for further guidance. *Philips*, 415 F.3d at 1305 ("[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.") (citation omitted). Significantly, in the preferred embodiments section, "desired items" is referred to in the singular: "once a customer has chosen *a desired item* for the registrant (i.e. *a registered gift*), the customer typically goes to a checkout counter where the point-of-sale data input device [] identifies *the desired item* for routing to the host computer." ('474 patent col. 6:44-48.) (emphasis added) Absent persuasive and contrary evidence, the specification strongly supports the construction to include single-item purchases within "desired items." *NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) ("It is elementary that a claim construction that excludes the preferred embodiment is rarely, if ever correct and would require highly persuasive evidentiary support.") (citation omitted). Likewise, courts have found that "a plurality of items" is one way to place an explicit limitation of more than one of an item in claim construction. *See*

*Dayco Products, Inc. v. Total Containment, Inc.,* 258 F.3d 1317, 1328 (Fed. Cir. 2001). Here, Sears followed this convention and used "a plurality of" to describe the multiple retail establishments involved in its inter-site product information system. ('474 patent col. 2:44-48.) But Sears did not use this phrasing in conjunction with "desired items," lending further support to the conclusion that the inventor did not intend "desired items" to be limited to "two or more items." *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1326 (Fed. Cir. 2003) ("when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim") (citation omitted).

Notably, BBB's argument that the system as a whole must be capable of collecting and routing a plurality of desired items, (BBB's Opening Br. 18), is an issue concerning the functional scope of the "data processor." *See infra* discussion on "data processor." This Court also discounts Sears' contention that the construction of a "desired item" as "two or more items selected by registrant" would defeat the purpose of the invention, as this assertion is an invalidity argument disguised as a claim construction argument. *See Philips*, 415 F.3d at 1327 (stating that the court "h[as] certainly not endorsed a regime in which validity analysis is a regular component of claim construction") (citation omitted).

In light of the plain language of the claims and the specification, this Court finds that Sears' proposed definition more closely reflects the Court's conclusion. However, both parties' proposed constructions unnecessarily included the qualifying phrase "by a registrant." This Court declines to impose such an indirect limitation, and construes the term as strictly referring to the numerosity of items a registrant can select or a customer can purchase. Accordingly, this Court finds that "desired items" means "one or more items desired."

II. *"Data Processor"*

The next disputed term "data processor" appears in claims 1, 2, 6, 10, 17, 19, 20, and 21 of the '474 patent. The term "data processor" is used in two distinct contexts: (1) within the host computer to operate on the gift registry database, and (2) at each retail site as an intermediary between the product selection device or registry input device to the host computer. BBB contends that the term means "a device that manipulates data." Sears disagrees and proposes that the term means "a device or series of devices that processes data by changing the form, meaning, appearance, location, or other characteristics of data." (BBB's Opening Br. 21; Sears' Opening Br. 17.) Based on the parties' arguments and proffered constructions, the disputed issue is whether the claims place specific functional requirements on the term "data processor."

This Court must focus on the limitations of "data processor" as defined in the claims of the patent. *Philips*, 415 F.3d at 1312. The '474 patent claim language clearly describes "a data processor" as a device that must be capable of "collecting the desired items selected by the registrant and route[ing] said desired items to… [the] registry database on [the] host computer," or "processing selection and purchasing transactions" by modifying the registry database to account for "desired items selected by the registrant . . . and desired items purchased by the customer." ('474 patent col. 9:19-15, 40-47.)

Sears' proposed construction depends on the dictionary definition of "data processing." Sears argues that data processors process data and therefore, by extension, can be defined simply by the general dictionary definition for data processing. This Court disagrees. First, the definitions for data processor and data processing are not transitive. While data processors indeed process data, not all types of data processing can be performed by every data processor. Moreover, this Court must focus on the capabilities of the "data processor" as limited by the

7

claim language. A patent must include "one or more claims particularly pointing out and distinctly claim the subject matter which the applicant regards as his invention." 35 U.S.C. § 112. Courts cannot diffuse the particularity of the claim language that distinctly claims the subject matter of the invention through construction. *See Texas Instruments v. United States ITC*, 988 F.2d 1165, 1171 (Fed. Cir. 1993) (holding that claim construction should not "read an express limitation out of the claims"). Here, Sears' disjunctive definition describes any device that "chang[es] the form, meaning, appearance, location, or other characteristics of data." (Sears' Opening Br. 21.) Further emphasizing the vagueness of Sears' construction, Sears explained that "other characteristics of data" within its construction implies that "a data processor" can perform any kind of processing function. (Sears' Resp. Br. 14.) Sears further proposes that the article "a" in the phrase "a data processor" should be construed as "a device or series of devices." In all, such broad construction reads in any number of functionally indeterminate devices alone or in combination that are incapable of performing limitations required by the invention.[1]

BBB's proposition that "data processor" means "a device that manipulates data" is similarly ambiguous. The Court notes that BBB gives examples of "data processor" operations within the invention that constitute manipulation of data. (BBB's Opening Br. 22.) However, absent a more specific definition, this Court finds that a device that is capable of manipulating data also grafts in devices incapable of satisfying the present invention's claim limitations. Therefore, both parties' proposed constructions of the term "data processor" would dilute and

---

[1] The Court declines to address the validity of Sears' argument that a router can be considered a data processor or a computer. Here, the pertinent inquiry is the limitations placed on the "data processor" by the claim language, not whether a router or any other pieces of hardware can be considered a data processor independent of the claim language.

8

read the explicit functional limitations out of the claim language, replacing clarity with ambiguity, and defeating the purpose of claim construction.

Nevertheless, the Court finds that lay persons would benefit from construction of the term. To construe the term, *Phillips* instructs the courts to analyze the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire intrinsic record. 415 F.3d at 1313. This Court notes that the patent claims themselves impose two distinct sets of functional limitations on the phrase "data processor." First, a "data processor" in the host computer must be capable of "processing selection and purchasing transactions." ('474 patent cls. 1, 17.) The claims 1 and 17 further specify that processing includes adding items selected by the registrant to the registry and associating the items purchased by the customer within the relevant entries in the registry database. (*Id.* cl. 17.) The summary section of the specification refers to the same adding and associating functions. Moreover, the preferred embodiments section of the specification describes the ability of the "data processor" not only to add and associate the registered or purchased items to the registry database, but also to modify other database fields such as a per item purchase counter or a running total of a registry count. (*Id.* col. 7:9-34.)

"A data processor" is also included at each retail site where it serves as an intermediary device to the host computer and each store location. The claim language explicitly requires the "data processor" to "collect the desired items selected by the registrant and route said desired items to [the] registry database." ('474 patent cls. 1, 17.) Significantly, in the preferred embodiments section of the specification, the patentees stated that "the in-store data processors are adopted to communicate with the product selection devices 15 and 25 through the [LANs] 12 and 22 to *thereby collect the codes of desired items* selected by the registrant. The processors

9

*then route the desired items* to the host computer 30 to create a registry database." ('474 patent col. 6:34-39.) (emphasis added) Even more telling is that in the patent drawings the data processors are represented to collect and route registry transactions, and the data sent between the in-store processor and the host computer are always depicted as a plurality of desired items. ('474 patent figs. 1, 2, 5, 6.)

After careful review of the patent's preferred embodiments section, this Court notes that, in addition to collecting and routing the items selected by the registrant to the host computer, the "data processor" can be adapted to route the information from the "point-of-sale" register to the host computer and route the data to and from the gift registry kiosk. (*Id.*) Finally, the Court notes that while the customer can purchase one or more desired items, nowhere do the specifications or the claim language contemplate an in-store processor incapable of collecting more than one item from a registrant. In all, the intrinsic evidence leads the Court to conclude that the retail location "data processor" must be capable of collecting and routing data. Because the claim language indicates the patentee's clear intent to limit the term "data processor" to have certain explicit functional capabilities, and because the specification further supports these limitations, this Court construes "data processor" to mean a "device that processes data by collecting and routing the data, or by adding, modifying, and associating the data."

The Court will next address Sears' argument that "a data processor" can refer to more than one device that processes data. Sears further proposes construing "a data processor" as "a device or series of devices." While the Federal Circuit has found that a device consisting of multiple individual components can infringe on a device consisting of a single component, *see Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991), absent explicit disclosure, there is no claim construction rule governing the practice of defining a device

10

to mean a series of the same device. On the other hand, the Federal Circuit has articulated that the articles "'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'" *Baldwin Graphic Sys., Inc. v. Siebert, Inc.,* 512 F.3d 1338, 1342-43 (Fed. Cir. 2008). Consequently, this Court finds that the use of the term "a data processor" in a claim does not limit the claims to a single data processor at any "retail establishment" or in any "host computer." *Id*., 512 F.3d at 1342 (holding that in the absence of extremely limited circumstances, the construction of "a" or "an" to mean "one or more" operates as a rule of construction, not merely as a presumption or a convention). Therefore, this Court finds that "a data processor" carries the meaning of "one or more devices capable of processing data by collecting and routing the data, or by adding, modifying, and associating the data."

### III. "Retail Establishment," "Retail Site," and "Inter-Site"

Finally, the Court will construe the terms "retail establishment," "retail site," and "inter-site," which appear in the preamble of the independent claims 1 and 17. In their claim construction briefs, the parties addressed the construction of these terms, and together they present the disputed issue of whether the '474 patent encompasses anything other than physical store locations.[2] (BBB's Reply Br. 16; Sears's Opening Br. 21.)

As an initial matter, the Court must determine whether the contested terms require construction. Generally, terms within the preamble are construed only when the terms limit or explain the claimed invention. *See Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1371 (Fed. Cir. 2003) ("the preamble is of no significance to claim construction" if "it cannot be said to constitute or explain a claim limitation"). "In general, a preamble limits the invention if it recites

---

[2] "Inter-site" was alternatively described as "a plurality of retail establishments" and "a plurality of retail sites." ('474 patent cols. 2:44-46, 10:59-61.) For these reasons, "retail establishment" and "retail site" will be construed equally to each other, as well as to "inter-site."

11

essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim." *Vizio, Inc. v. International Trade Com'n*, 605 F.3d 1330, 1340 (Fed. Cir. 2010) (citation and quotation marks omitted). Conversely, the preamble is not restrictive if it is only used to state "the purpose or intended use of an invention." *Marrin v. Griffin*, 599 F.3d 1290, 1294 (Fed. Cir. 2010). Courts must review the "overall form of the claim, and the invention as described in the specification and illuminated in the prosecution history" to determine whether the preamble constitutes a limitation. *Altiris*, 318 F.3d at 1371.

In looking at the patent as a whole, this Court finds that the disputed terms explain and give context to certain claimed limitations within the present registry system invention. The invention at issue includes physical component limitations that are sensible only within certain physical locations, such as "[the] handheld product selection device directly in communication with [a LAN] via wireless communication" and "[the] point-of-sale data processor [that] communicate[s] with the point-of-sale input device." ('474 patent cols. 9:13-16, 11:19-13.) The specification also explains that one aspect of the invention attempts to solve the lack of "real-time" updates of the gift registry systems within prior art caused by having to return the handheld product selection device to a staging area. Another aspect of the invention attempts to solve the problem where a "purchasing customer typically has to travel to [a particular store] to retrieve the registry and make the purchase." Thus, where the system resides and operates is material and can limit the scope of the claimed invention.

Moreover, a plurality of "retail establishments" and "retail sites" has been used to define "inter-site," serving as the antecedent to the claim term "inter-site." Therefore, this Court finds that the terms "retail establishment," "retail site," and "inter-site" are not merely statements of intended use. Consequently, this Court will construe the preamble terms because they are

essential to understanding the features of the invention.  *See Griffin v. Bertina*, 285 F.3d 1029, 1033 (Fed. Cir. 2002) (holding the preamble should be construed because the term "[d]iagnosis is . . . the essence of [the] invention"); *Marrin*, 599 F.3d at 1294 (holding the preamble need not be construed where "the preamble language only added an intended use").

Turning to the substantive construction of the terms, the parties dispute whether "retail establishment" and "retail site" mean "a store location," as BBB contends, or "a store location or website," as Sears proposes.  Similarly, the parties dispute the meaning of "inter-site." within claim 17.  Sears also argues that the three disputed terms in the claim preamble include web-based operations because the patent specification discusses internet embodiments in two passages.  (Sears' Opening Br. 5, 22.)

The Court is not persuaded by Sears' argument.  "Retail establishment" appears in claim 1 of the '474 patent, which states that the claimed product information system is comprised of "a local area network," "a handheld product selection device," "a host computer," "a data processor," "a registry retrieval device," "a point-of-sale data input device," and "a registry input device."  ('474 patent col. 9:9-47.)  These explicit claim limitations provide the Court with clear guidance on the construction of the term.  While Sears is correct that the specification of the '474 patent discloses an alternative embodiment using web-based implementation, the patentees never mention any such devices in their claims.  To construe "retail establishment" as a singular "website" based embodiment would contradict the clear limitations of the claims, such as the inclusion of the "hand held product selection device" that cannot be implemented on a website, or in a registrant or customer's home.  While claim terms should be construed in the context of the specifications, the claims of a patent need not encompass all disclosed embodiments.  *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.,* 529 F.3d 1364, 1373 (Fed. Cir. 2008).  Therefore,

13

the Court finds that "retail establishment" does not include "websites." *Texas Instruments, Inc.*, 988 F.2d at 1171 (holding that the specification cannot be used to extract limitations set forth in clear and unambiguous claim language).

Similarly, the relevant language in claim 17 defines an "inter-site product information system" as "a plurality of retail sites . . . *each of said sites comprising* [] a local area network," "a handheld product selection device," "a product selection device data processor," "registry retrieval device," a point-of-sale data input device," "a point-of-sale data processor, " and "a host computer providing a registry database." ('474 patent cols. 10:59-11:32.) (emphasis added) Thus, based on the claim language alone, it is clear that each "site" within the "inter-site product system" must contain all of the listed limitations. As discussed *supra*, it is clear that web-based embodiments are incapable of including some explicit claim limitations. Notably, Sears' argument that the claim limitations are satisfied if the limitations are observed at some sites (i.e. physical store locations) but not other sites (i.e. websites) is an indirect admission that web-based embodiments cannot contain some of the explicit claim limitations. It is of no consequence that the inventor may have subjectively intended to claim these embodiments. Here, the claim cannot include web-based embodiments while staying within the claimed limitations. *See id.* (holding that express limitations cannot be read out of the claims through claim construction); *see also Novo Nordisk of N. Am. v. Genetech, Inc.*, 77 F.3d 1364, 1369 (Fed. Cir. 1996) ("[A]ll that appears in the specification is not necessarily within the scope of the claims and thus entitled to protection. What is not claimed, even though disclosed [in the specification] as part of the 'invention,' cannot be enjoined.").

The Court also finds that the specification also does not support Sears' efforts to include "website" into the disputed terms. All six drawings included in the '474 patent depict physical

14

store locations, ('474 patent fig. 1), specify "in-store processors," (*Id.* figs. 1, 2, 5, 6), or include physical components within physical store locations (*Id.* figs. 3, 4). Web-based embodiments were never depicted. In addition, a plain reading of the specification shows that the disclosed web-based embodiment specifically refers to registrant and customer operations "at home," distinct and apart from operations at either a "retail establishment" or a "retail site." (*Id.* col. 5:47-51; *see also id.* col. 6:28-33 ("the registrant may be able to click on the desired items . . . in the registrant's home").)

As such, Sears' proposition that "retail establishment," "retail site," and "inter-site" includes "web sites" fails. This is sufficient to reject Sears' proposed construction, but there are additional reasons to do so. Paragraph 1 of 35 U.S.C. § 112 states: "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art . . . to make and use the same . . . ." Here, the web-based embodiments were discussed only briefly.[3] BBB points out, and this Court agrees, that Sears did not provide an enabling disclosure of web-based registries. The '474 patent is a system patent, however, the specification does not list the system components required to enable any web-based embodiments. For example, the patent failed to disclose: the components required to enable the web server; the limitations and capabilities of the backend web server; the potentially modified allocation of functionality between the web site and the gift registry database; the web-based components required in place of the physical components explicitly mentioned in the claim language; or the connection or

---

[3] The only web-based embodiment disclosures in the patent include "a registrant may be able to enroll at home over a public access system such as the Internet, and purchasing consumers can retrieve updated registry lists and make purchases with credit cards at home over such a public access system," ('474 patent col. 5:47-51), and "a sponsoring store can post a Web page on the Internet listing many or all of the products offered within a nationwide chain of stores, and the registrant may be able to click on the desired items from a personal computer in the registrant's home." (*Id.* col. 6:28-33).

interface standards required to connect between devices themselves or with the gift registry database. Hence, Sears' proposed construction would leave the claim terms with no enabling disclosure. *See Inpro II Licensing v. T-Mobile USA, Inc.*, 450 F.3d 1350, 1355 (Fed. Cir. 2006).

Even assuming *arguendo* that a personal computer in a registrant or customer's home can substitute the handheld product selection device described within the claims, this Court is unaware of any technology, either at the time of the invention or in the present, that would enable the personal computer to be in direct, wireless communication with the LAN that connects to the remotely located web server. Thus, the absence of an enabling disclosure favors BBB's proposed construction of the terms. *Id.* (holding that courts should not construe a claim to encompass subject matter that is not enabled by the specification).

Finally, the Court disagrees with Sears' assertion that a nationwide networked gift registry necessarily includes web-based embodiments. A plurality of brick and mortar retail stores connected to a central "host computer" provides for a nationwide networked gift registry that allows for gifts to be registered or purchased from "any location in the country." ('474 patent col. 8:11-38, figs. 1, 5.) Consequently, in the context of the patent, "retail establishment" and "retail site" mean "a store location," and "inter-site" means "a plurality of store locations."

## CONCLUSION

For the reasons set forth above, the disputed claim terms have the following meanings:

1. the term "desired items" means "one or more items desired";

2. the term "data processor" means "one or more devices capable of processing data by collecting and routing the data, or by adding, modifying, and associating the data";

3. the terms "retail establishment" and "retail site" mean "a store location";

4. the term "inter-site" means "a plurality of store locations."

**s/Susan D. Wigenton, U.S.D.J.**

Orig:        Clerk
Cc:          Parties
             Madeline C. Arleo, U.S.M.J.