**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| BED BATH & BEYOND, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No.  08-5839 (SDW)(MCA) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| SEARS BRANDS, LLC | : | |
| | : | June 4, 2012 |
| Defendant. | : | |
| | : | |

**WIGENTON**, District Judge.

Before the Court is Plaintiff Bed Bath & Beyond, Inc.'s ("Plaintiff" or "BBB") Motion for Summary Judgment on Non-Infringement of U.S. Patent No. 5,970,474 (the "'474 patent") and Plaintiff's Motion for Partial Summary Judgment Limiting Defendant Sears' ("Defendant" or "Sears") Damages Claim for Failure to Comply with the Marking Requirement  of 35 U.S.C. § 287 pursuant to Fed. R. Civ. P. 56(c) ("Motions").  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400.  These Motions are decided without oral argument pursuant to Fed. R. Civ. P. 78.  For the reasons stated below, this Court denies Plaintiff's Motion for Summary Judgment on Non-Infringement and grants its Motion for Partial Summary Judgment Limiting Sears' Damages.


**FACTUAL AND PROCEDURAL HISTORY**

On October 19, 1999, the '479 patent titled "Registry Information System For Shoppers" was issued to Michael Leroy *et al*.  As this Court noted in its <u>Markman</u> Opinion, "the patent describes a system that provides solutions to problems commonly faced by retail store gift registry systems, such as: (1) duplicate gift purchases by customers due to delayed updates to gift

1

registry records; and (2) difficulties retrieving gift registry records where the registrant and the purchaser are not in the proximity to the same store." (Docket Entry No. 111 at 1-2) (citing '474 patent col. 1:21-28). The Abstract describes the patent as "[a] product information system for selecting, monitoring and [the] purchasing of products in a retail establishment [which] includes a product selection device, a data processor, a registry retrieval device, a point-of-sale data input device, and a host computer." (Abstract.) The '474 patent consists of two independent claims which are substantially similar: claim 1, which is to be implemented in a "retail establishment" and claim 17, which is to be implemented in "[a]n inter-site" system. (Id. cls. 1, 17; col. 2:16, 2:44.) Claims 2-16 are dependent on claim 1 and claims 18-22 are dependent on claim 17.

BBB, which owns and operates retail and online stores, also offers a bridal and gift registry as part of its services. (Compl. ¶¶ 8-9.) On July 18, 2008, Defendant contacted BBB and informed it that its gift registry system infringed on one or more claims of the '474 patent. (Faegenburg Decl. Ex. B.) Plaintiff responded to the charge of infringement. Subsequently, on November 11, 2008, Defendant once again informed BBB that its gift registry system infringed on the '474 patent. (Compl. ¶¶ 11-12.) Consequently, on November 26, 2008, Plaintiff initiated this action seeking a declaration of non-infringement. On June 15, 2009, Sears filed an Answer and Counterclaim alleging that BBB's bridal and gift registry infringes the '474 patent. (Def.'s Countercl. ¶¶ 28-31.)

On August 20, 2010, this Court conducted a claim construction hearing. At the Markman hearing the parties asked the Court to address three claim terms: (1) "desired items"; (2) "data processor"; and (3) "retail establishment," "retail site," and "inter-site." (Docket Entry No. 111 at 2). This Court concluded that: "desired items" meant "one or more items desired"; (id. at 6); "data processor" is a "device that processes data by collecting and routing the data, or by adding,

modifying, and associating the data"; (id. at 10); and "retail establishment" and "retail site" meant "a store location" and "inter-site" meant "a plurality of store locations."  (Id. at 16).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." Id. at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.  The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings.  Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"

Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp., 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." Black Car Assistance Corp. v. New Jersey, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

## DISCUSSION

1. BBB's Motion for Summary Judgment on Non-Infringement

   a. Literal Infringement

      i. BBB's In-Store System

There are two steps in a patent infringement analysis. Tate Access Floors, Inc. v. Interface Architectural Res., Inc., 279 F.3d 1357, 1365 (Fed. Cir. 2002). The first step is to define the meanings of the claims of the patent. Markman, 52 F.3d at 976. Thereafter, the court must compare the claims as construed with the alleged infringing product. Tate, 279 F.3d at 1365. This Court has already undertaken the first step of the infringement analysis. Therefore, it will now determine if BBB's bridal and gift registry system infringes on one or more claims of the '474 patent. BBB maintains that it is entitled to summary judgment because its bridal and gift registry does not infringe the '474 patent. According to Plaintiff, its system "does not meet

the claim limitation requiring an in-store data processor adapted to collect and then route to a registry database." (Pl.'s Br. 2.) Plaintiff bases this argument entirely on its assertion that this "Court's <u>Markman</u> opinion establishes[] that th[e] data processor must be capable of <u>storing</u> data identifying <u>multiple</u> items to be routed, such that the claims do not encompass a router only capable of one-item-at-a-time operation, such as BBB's." (<u>Id.</u>) (emphasis added). In the <u>Markman</u> opinion, this Court observed that: "while the customer can purchase one or more desired items, nowhere do the specifications or the claim language contemplate an in-store processor incapable of collecting more than one item from a registrant." (Docket Entry No. 111 at 10). BBB, relying on this observation, contends that this Court construed "collect" to mean the ability to hold or store data identifying multiple items "at any one time" or "at the same time" from the same registrant. (Pl.'s Br. 13; Pl.'s Reply Br. 9.)

"Collect" was not one of the terms presented to the Court for construction. As a result, this Court did not define "collect" in the <u>Markman</u> opinion and Plaintiff cannot make "collect" a construed claim. Therefore, it follows logically that Plaintiff's construction of "collect" has no basis in this Court's <u>Markman</u> opinion. As an initial matter, this Court seeks to clarify that the sentence Plaintiff relies on was merely an observation the Court made. Contrary to BBB's position, this Court never <u>held</u>, <u>found</u>, or <u>concluded</u> that the "data processor" must be "capable of holding, storing, or 'collecting' more than one item from a registrant" at a time. (Pl.'s Reply Br. 1, 4.) Tellingly, the words "store," "hold" or "at a time" are absent from the statement BBB relies on. In fact, these words are not used in the context Plaintiff is proposing anywhere in the <u>Markman</u> opinion. Furthermore, although this Court observed that "the data sent between the in-store processor and the host computer are always depicted as a plurality of desired items," (Docket Entry No. 111 at 10), this Court did not hold that the in-store processor stores or holds

multiple desired items at any one time.  This Court would not have construed "collect" because the parties never presented it for construction.  Therefore, BBB's reliance on that sentence as support for its contention that this Court constructed "collect" to mean hold or store multiple items at a time is misplaced.

Moreover, "the specification is always highly relevant to the claim construction analysis.  Usually it is dispositive; it is the single best guide to the meaning of a disputed term.'" Phillips v. AWH Corp., 415 F.3d 1303, 1315 (Fed. Cir. 2005), cert. denied, 546 U.S. 1170 (2006) (internal quotation marks and citation omitted).  The only place the word "store" or "storage" is found in the patent is in connection with the host computer.  For instance, the preferred embodiment from the specification describes the "host computer" as having "a storage unit for maintaining the registry database."  ('474 patent cols. 7:9-11.)  Additionally, the specification for the host computer provides that the various "desired items" are "sent to the host computer through the in-store processor to create the registry database, which is stored in the host computer."  (Id. cols. 8:6-10.)  Claims 1 and 17 of the '474 patent also describe the host computer as "having a storage unit for maintaining the registry database."  (Id. cls. 1, 17.)

On the other hand, the words "store," "storage" or "hold" are not associated with "data processor" anywhere in the specifications or claims of the '474 patent.  For example, the specification's preferred embodiments indicate that the "data processor" is "adapted to communicate with the product selection devices . . . through the local area network . . . to thereby collect the codes of desired items selected by the registrant.  The processor then routes the desired items to the host computer [] to create a registry database."  (Id. cols. 6:34-39.) Furthermore, claims 1 and 17 of the '474 patent describe the "data processor" as being in "communication with said local area network adapted to communicate with the product selection

device via said local area network to thereby collect the desired items selected by the registrant and route said desired items to said registry database on said host computer."  (Id. cls. 1, 17.) Therefore, neither the claim language nor the specification supports BBB's contention.  Plaintiff is adding extra limitations into the claim and neither it nor this Court may do so.  See Am. Piledriving Equip., Inc. v. Geoquip, Inc., 637 F.3d 1324, 1331 (Fed. Cir. 2011) ("It is well settled that the role of a district court in construing claims is not to redefine claim recitations or to read limitations into the claims.").

Although Sears' expert, Dr. William Beckmann ("Beckmann"), testified that Sears' data processor has the "additional functionality, namely the ability to store information about desired items," he clarified that the storage feature or "backup functionality,"  is "not the normal mode of operation, [and] [i]s not part of the claimed invention."[1]  (Faegenburg Decl. Ex. E, Beckmann Dep. 37:17-19, 38:1-2, 45:21-24.)  Sears' position is supported by the specifications and claim language because the data processor's ability to store is not claimed in the patent.  It is established law that "what is not claimed is public property.  The presumption is, and such is generally the fact, that what is not claimed was not invented by the patentee . . . The patent itself, as soon as it is issued, is the evidence of this.  The public has the undoubted right to use . . . what is not specifically claimed in the patent."  Johnson & Johnston Assocs. v. R.E. Serv. Co., 285 F.3d 1046, 1053 (Fed. Cir. 2002) (citation omitted); see also Phillips, 415 F.3d at 1312 (noting that the "bedrock principle" of patent law is that "claims of a patent define the invention to

---

[1] Plaintiff, relying on Fowle v. C & C Cola, 868 F.2d 59, 67 (3d Cir. 1989), urges this Court not consider Beckmann's expert report because it is unsworn.  (Pl.'s Reply 10.)  BBB's argument lacks merit because Sears provided Beckmann's sworn deposition testimony which is sufficient under the December 2010 amendment to Federal Rule of Civil Procedure 56.  See Deuber v. Asbestos Corp., Civ. A. No. 10-78931, 2011 U.S. Dist. LEXIS 150102, at *25 (E.D. Pa. Dec. 2, 2011) (stating that submitting a sworn deposition of the expert cures the deficiency in an unsworn report).  In fact, Plaintiff's reliance on Fowle v. C & C Cola is misplaced because that expert report, unlike Beckmann's, was not attached to the expert's deposition.  868 F.2d at 67; Airlines Reporting Corp. v. Belfon, Civ. 2003/146, 2010 U.S. Dist. LEXIS 97349, at *23 n.4 (D.V.I. Sept. 15, 2010) (concluding that although no affidavit or deposition was attached to the expert's report, the report was nonetheless admissible because a transcript of the expert's deposition in which he authenticates his expert report was provided to the court).

which the patentee is entitled the right to exclude.").  Consequently, the data processor's ability

to store is not part of the invention.  Because "claim construction analysis must begin and remain

centered on the claim language itself,"   Innova/Pure Water, Inc. v. Safari Water Filtration Sys.,

Inc., 381 F.3d 1111, 1116 (Fed. Cir. 2004), a feature that is not part of the patent, cannot be used

as a basis to find non-infringement.  See Dillon Pulley Co. v. McEachran, 69 F.2d 144, 147 (6th

Cir. 1934) ("[T]he question of infringement must be determined by a consideration of that which

is the invention, and for which monopoly was granted.").

        Additionally, BBB's position that the data processor must be capable of collecting

multiple items at a time is not supported by the Abstract, the specification's preferred

embodiment, or the parties' joint construction.  The Abstract describes that "desired items

consecutively selected by the registrant are added to the registry database to create a registry

list."  (Abstract) (emphasis added).  Similarly, in the specification's preferred embodiment,

"desired items consecutively selected by the registrants are added to the registry to create a

registry list."  ('474 patent cols. 7:11-13.)  The parties' joint construction defines "consecutively

selected" as "chosen one after another."   (Docket Entry No. 56-2 at 1) (emphasis added).

Therefore, BBB's current position that the data processor must collect multiple items at any

given time is a departure from its previous construction and inconsistent with the specification's

preferred embodiment.  In fact, Plaintiff concedes that the parties agreed that "consecutively

selected" will mean "chosen one after another."  (Pl.'s Reply 7.)  Nonetheless, it contends that

the phrase "says nothing about whether those items can be held in the ISP before being routed to

the host computer."  (Id.)  The Markman opinion also says nothing about whether those items

can be held or stored in the data processor before it is routed.

Plaintiff's construction of "collect" is also not supported by this Court's construction of "data processor" and is inconsistent with the Court's construction of "desired items." "Data processor" is described in both claims 1 and 17 as "being in communication with said local area network adapted to communicate with the product selection device via said local area network to thereby <u>collect the desired items</u> selected by the registrant and route said desired items to said registry database on said host computer." ('474 patent cls. 1, 17) (emphasis added). This Court held that "data processor" is a "device that processes data by <u>collecting and routing the data</u>, or by adding, modifying, and associating the data." (Docket Entry No. 111 at 10) (emphasis added). This construction does not reference the number of items selected at a time or whether those items have to be stored. Moreover, this Court construed "desired items" to mean "one or more items desired." (<u>Id.</u> at 6). In the claim language, "collect" obviously qualifies "desired items." As such, BBB's construction that "collect" requires "more than one desired item from a given registrant at any given time," (Pl.'s Br. 20), is at odds with the Court's construction of "desired items," which means "one or more items." Because BBB's contention that its system does not infringe the '474 patent is based on an unsupported construction of "collect," it has not established that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. <u>Celotex Corp.</u>, 477 U.S. at 322-23.

Alternatively, Sears has provided evidence indicating that BBB's router meets BBB's construction of "collect." For instance, Sears' expert, Beckmann, testified that the router in Plaintiff's system can collect multiple items from a registrant. Beckmann testified as follows:

> Q.   Okay . . . in your opinion[,] what would you consider to be an example of an in-store processor that is capable of collecting more than one item from a registrant?

A.    Okay . . . I'm going to assume that when she wrote "collecting," she's used . . . the word "collect" as it appears in the patent.
      Is that in agreement with what you asked?
Q.    Sure.
A.    Okay. A good example is the router such as the Cisco 2811 that the BBB stores employ.

(Faegenburg Decl. Ex. E, Beckmann Dep. 18:15-19, 19:2-10.)

Additionally, BBB's Laura Lane ("Lane") testified that a registrant "can enter in a quantity instead of having to scan the same item multiple times" on BBB's system. (Steedle Decl. Ex. 2, Lane Dep. 343:10-14, 344:2-24; see also Steedle Decl. Ex. 3, Daghlian Dep. 60:17-21.) Furthermore, Vatche Daghlian ("Daghlian") testified that two different scanners can add information to the same registry at the same time on Plaintiff's system. (Steedle Decl. Ex. 3, Daghlian Dep. 288:19-289:7.) Plaintiff's router can also add a collection of Stocking Keeping Units ("SKU")[2] to a registry at one time. Daghlian explained that the collection SKU functionality "allow[s] a customer to scan a parent SKU, and it would have associated children with it, they would be able to add it in one shot to the registry." (Id. at 111:9-12.) In fact, Plaintiff's expert, Michael Shamos ("Shamos") retracted his assertion that "[i]t is physically impossible for the code and the quantity to even be resident in the router at the same time." (Steedle Decl. Ex. 5, Shamos Dep. 194:7-11.) Shamos testified that he "recognize[s] that it's not physically impossible for the code and quantity to be resident" in the router at the same time and "agree[d] that the Bed Bath & Beyond router does sometimes transfer the code and the quantity at the same time." (Id. at 194:16-19, 20-24.)

Defendant has also provided evidence that BBB's router has the ability to hold or store information. For example, Beckmann testified that "[i]f there's a network interruption and it is

---

[2] A SKU "is a number or string of alpha and numeric characters that uniquely identify a product." http://www.techterms.com/definition/sku (last visited May 30, 2012).

very constrained in time, th[e] storage will be maintained" in Plaintiff's router.  (Faegenburg Decl. Ex. E, Beckmann Dep. 40:3-16.)   Kevin Wagner, who is responsible for data center operations for BBB, also testified that "one of the things that the router does is at least wait for some period of time to give the scanner a chance to convey information[.]"  (Steedle Decl. Ex. 4, Wagner Dep. 122:24-123:3.)   Overall, this Court concludes that Sears has "set forth specific facts showing the existence of [a genuine] issue for trial."  Shields, 254 F.3d at 481 (citing Fed. R. Civ. P. 56(e)).  Consequently, Plaintiff's motion for summary judgment on non-infringement is denied.

ii.  BBB's Internet Registry

Although this Court concluded in its Markman opinion that the claim terms "retail establishment," "retail site," and "inter-site" did not include websites, (Docket Entry No. 111 at 14-15), Defendant "is seeking damages for the use of the infringing BBB system by users who either select or purchase items in the brick-and-mortar stores, using the infringing system." (Def.'s Br. 9.)  Sears depicts the infringing transactions as follows:

|  | In-Store Purchase | Online Purchase |
|---|---|---|
| In-Store Selection | Scenario 1 (infringing) | Scenario 3 (infringing) |
| Online Selection | Scenario 2 (infringing) | Scenario 4 (non-infringing) |

In Centillion Data Sys. LLC v. Qwest Commc'ns Int'l, Inc., the court concluded that "direct infringement by 'use' of a system claim 'requires a party . . . to use each and every . . . element of a claimed [system].'"  631 F.3d 1279, 1284 (Fed Cir. 2011) (alterations in original). The parties do not dispute that Scenario 1 is eligible for infringement or that Scenario 4 is not eligible for infringement.   (Def.'s Br. 9, 28; Pl.'s Br. 26.)   However, BBB contends that Scenarios 2 and 4 do not infringe on the '474 patent because Sears cannot establish that each use of BBB's internet registry "involves the use of each and every element of the patented system."

(Pl.'s Br. 25.)  For instance, Plaintiff maintains that "a handheld production selection device" is not used in Scenario 2.  (Id. at 26.)  Similarly, it asserts that Defendant cannot demonstrate that a "point-of-sale input device" is utilized in Scenario 3 as the claims require.  (Id.)

This Court concludes that Sears has provided evidence indicating that there is some fluidity within Scenario 2.  For example, Lisa Nemeth ("Nemeth") and Richard McMahon ("McMahon") testified that registrants "can add items on the Internet to an existing [in-store] registry" and vice versa.  (Steedle Decl. Ex. 10, Nemeth Dep. 227:1-3; Steedle Decl. Ex. 16, McMahon Dep. 146:25-147:7.)  Additionally, individuals can purchase items on an in-store registry on the internet.  (Steedle Decl. Ex. 10, Nemeth Dep. 227:4-7.)  Most significantly, McMahon testified that if a registrant creates a registry online and he/she subsequently goes to a store and adds additional items, BBB does not have the ability to track those items that were added online and those that were added in-store.  (Steedle Decl. Ex. 16, McMahon Dep. 148:20-25.)  In fact, Christine Hutra testified that if a registrant starts his/her registry online, that registrant's designation as an online registrant will not change even if he/she subsequently goes to the store and adds items to the existing online registry.  (Steedle Decl. Ex. 17, Hutra Dep. 80:2-22.)  Therefore, Defendant has set forth specific facts showing a genuine issue for trial precluding summary judgment on Scenario 2.  Shields, 254 F.3d at 481.

Sears, however, has failed to establish that Scenario 3 employs all of the '474 patent's elements.  As BBB points out, transactions in Scenario 3 do not use a "point-of-sale input device" as required by the '474 patent.  (Pl.'s Br. 26.)  Defendant's reliance on NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282 (Fed. Cir. 2005) is misplaced.  In NTP, the issue before the court was not whether the accused system used all of the elements of the patent.  In fact, in Centillion Data Sys. LLC, the court explained that the accused system in NTP "was 'using'

every element of the system." 631 F.3d at 1284. Rather, "the issue was whether [the] infringement occurred within the United States." Id. at 1283 (citing NTP, Inc., 418 F.3d at 1313). Therefore, contrary to Sears' position, in order to demonstrate direct infringement it must establish that Scenario 3 uses every element of the '474 patent. Here, Defendant has failed to establish that Scenario 3 uses the "point-of-sale input device" claimed in the '474 patent. Consequently, Scenario 3 does not directly infringe on the '474 patent. See Metrologic Instruments, Inc. v. PSC, Inc., Civ. A. No. 99-4876, 2004 U.S. Dist. LEXIS 24949, at *38 (D.N.J. Dec. 13, 2004) (citing Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1330 (Fed. Cir. 2001)) ("To determine whether the accused devices infringe, it must be determined whether each and every element of the asserted claim is present in the accused device. If a single claim element is not present, the claim is not infringed.").

   b.   Doctrine of Equivalents Infringement

      i.   BBB's In-Store Registry

Alternatively, this Court finds that summary judgment is precluded under the doctrine of equivalents. The doctrine of equivalents is based on the principle that "if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape." Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 608 (1950) (internal quotation marks and citation omitted). To establish infringement under this doctrine, "the patentee has the burden of proving a real identity of means, operation, and result." Ziegler v. Phillips Petroleum Co., 483 F.2d 858, 868 (5th Cir. 1973), cert. denied, 414 U.S. 1079 (1973).

BBB argues that unlike Sears' in-store data processor, its router is not capable of "stor[ing] data regarding multiple selected items from a registrant . . . as this Court has construed

the claims." (Pl.'s Br. 23.) Plaintiff, once again, is basing non-infringement on this Court's alleged construction of "collect." However, as stated earlier, BBB's construction of "collect" is not supported by this Court's <u>Markman</u> opinion or the claim language. Therefore, that is not a basis to grant summary judgment.

ii. <u>BBB's Internet Registry</u>

Plaintiff contends that its registry does not infringe under the doctrine of equivalents. According to BBB, Sears' position that BBB's internet registry infringes the '474 patent "completely vitiate[s] limitations of the claims." (Pl.'s Br. 27.) However, Sears is not alleging that the internet functionality alone infringes the '474 patent. Instead, it is asserting that Plaintiff's internet registry and in-store registry are "integrated within one and the same system" because Plaintiff "does not use a separate system for Internet registry selections or purchases." (Faegenburg Decl. Ex. C ¶ 141.) Beckmann testified that Plaintiff's "use of the Internet for its gift registry functionality still works with the infringing system." (<u>Id.</u> ¶ 142.)

At this juncture, Sears' "evidence is to be believed and all justifiable inferences are to be drawn in [its] favor." <u>Marino</u>, 358 F.3d at 247 (internal quotation marks omitted). Additionally, the Supreme Court has instructed that "[a] finding of equivalence is a determination of fact" and "[l]ike any other issue of fact, final determination requires a balancing of credibility, persuasiveness and weight evidence." <u>Graver Tank & Mfg. Co.</u>, 339 U.S. at 609-10; <u>see also</u> <u>Boehringer Ingelheim Animal Health v. Schering-Plough Corp.</u>, 6 F. Supp. 2d 324, 329 (D.N.J. 1998 (citing <u>Hilton Davis Chem. Co v. Warner-Jenkinson Co.</u>, 62 F.3d 1512 (Fed. Cir. 1995)) ("According to the Federal Circuit, infringement under the doctrine of equivalents is an issue of fact to be submitted to the jury."). However, such determinations are improper at the summary judgment stage. <u>Marino</u>, 358 F.3d at 247; <u>see also</u> <u>Petruzzi's IGA v. Darling-Delaware</u>, 998

14

F.2d 1224, 1230 (3d Cir.), cert. denied, 510 U.S. 994 (1993) ("[A]t the summary judgment stage, a court is not to weigh the evidence or make credibility determinations.  Instead, these tasks are left for the fact-finder.") (internal citation omitted).  Consequently, this Court concludes that the determination of whether Scenarios 2 and 3 infringe the '474 patent under the doctrine of equivalents is a question best left to the factfinder.  Hence, summary judgment is denied.

    2.  <u>Plaintiff's Motion for Partial Summary Judgment on Limiting Sears' Damages</u>

       BBB contends that Sears' damages should be limited to the damages it incurred after July 18, 2008, because Sears failed to mark its patent as required by 35 U.S.C. § 287(a).  Pursuant to § 287(a), a patentee must notify the public "of a patent's existence when it covers a product made by the patentee or a licensee."  <u>MOSAID Techs., Inc. v. Samsung Elecs. Co.</u>, 362 F. Supp. 2d 526, 555 (D.N.J. 2005); <u>see also</u> <u>Dunlap v. Schofield</u>, 152 U.S. 244, 247-48 (1894) (noting that the purpose of the marking requirement is to give notice of the patent to the public).[3]  Section 287(a) provides in relevant part:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them . . . may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or by fixing thereon the word "patent" or the abbreviation "pat." together with an address of a posting on the Internet . . . that associates the patented article with the number of the patent, or when, from the character of the article, this can not [sic] be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice.  <u>In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.</u>  Filing of an action for infringement shall constitute such notice.

---

[3] Section 287's marking requirement does "not apply where the patent is directed to a process or method."  <u>Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.</u>, 559 F.3d 1308, 1316 (Fed. Cir. 2009).  The patent in this case is directed at a system.  (Def.'s Br. 29.)  Therefore, the notice requirement applies.

35 U.S.C. § 287(a) (emphasis added).

Notice may be actual or constructive.  Actual notice requires the patentee to "provide the accused infringer with specific and actual notice that charges infringement of an identified patent by a specific accused product." Metrologic Instruments, Inc., 2004 U.S. Dist. LEXIS 24949, at *51 (citing Amsted Indus. v. Buckeye Steel Castings Co., 24 F.3d 178, 185 (Fed. Cir. 1993)).  A patentee provides constructive notice by adhering to the strict marking requirements set forth in § 287. Metrologic Instruments, Inc., 2004 U.S. Dist. LEXIS 24949, at *51.  The patentee must also establish that it has "consistently [and continuously] marked substantially all of its patented products, and it was no longer distributing unmarked products." Am. Med. Sys., Inc. v. Med. Eng'g Corp., 6 F.3d 1523, 1537, 1538 (Fed. Cir. 1993), cert. denied, 511 U.S. 1070 (1997).  The burden of proving adherence to § 287's requirements lies with the patentee. Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1111 (Fed. Cir. 1996); see also Dunlap v. Schofield, 152 U.S. 244, 247-48 (1984) ("[T]he burden of proving [notice] is upon the [patentee].").  Compliance with § 287's notice requirement is a question of fact. Maxwell, 86 F.3d at 1111.

Here, Sears does not contend that it was not required to mark the '474 patent or that it complied with § 287.  In fact, Sears' in-house counsel, Mary Tortorice's ("Tortorice"), testimony establishes that Sears was aware that it was required to mark its patent but failed to comply with § 287's requirements.  Tortorice testified that in the summer of 2008, Sears and its sub-licensee, Kmart, marked the patent on their website and in the store.  (Faegenburg Decl. Ex. K; Faegenburg Decl. Ex. J, Tortorice Dep. 138:13-139:4, 141:9-24.)   However, the markings subsequently fell off and although Tortorice has directed Sears to put the markings up again it has failed to do so.  (Id. at 138:3-8, 142:23-143:3.)  Therefore, Sears did not mark the patent

consistently and continuously as required by the statute.  <u>Am. Med. Sys., Inc.</u>, 6 F.3d at 1537, 1538.

Defendant's opposition simply asserts that Plaintiff cannot dispute that Defendant practices the '474 patent and in the next breath maintain that Defendant had an obligation to mark the invention.  (Def.'s Opp'n Br. 1.)  Defendant then argues that "[i]f . . . BBB stipulates that Sears is using its own invention, then Sears will stipulate that it should have marked and will not seek damages for the time period before July 18, 2008, when it gave BBB actual notice of infringement."  (<u>Id.</u>)  This Court concludes that this assertion alone is insufficient to withstand a motion for summary judgment.  Sears has not demonstrated a genuine dispute as to any material fact on the issue of whether it provided constructive notice.  As stated earlier, Defendant has not argued that it marked the invention.  The basis of Defendant's counterclaim is that it practices the '474 invention.  As a result, it was required to mark it under § 287(a).  Because Sears has not provided any evidence indicating that it marked the invention, it can only recover damages for infringement occurring after it sent BBB actual notice.  Therefore, Sears is precluded from collecting damages prior to July 18, 2008.

**<u>CONCLUSION</u>**

For the reasons stated above, BBB's Motion for Summary Judgment on Non-Infringement is DENIED and its Motion for Partial Summary Judgment Limiting Sears' Damages is GRANTED.

<u>s/ Susan D. Wigenton, U.S.D.J.</u>

cc:     Magistrate Judge Madeline C. Arleo